[No. 2019.]

FRANK ATTERBERRY *alias* FRANK ANDERSON *v.* THE STATE.

1. THEFT — EVIDENCE — OWNERSHIP.— In so far as the ownership of the alleged stolen property by two or more persons is concerned, the testimony of one of the joint owners, who had the care, management, control and custody of it, and in whom alone the ownership was alleged, is as good evidence upon a trial for the theft as the written articles of partnership would be.

2. SAME — PROOF OF OWNER'S NON-CONSENT TO THE TAKING.— The indictment alleged the ownership of the property to be in one J. C. Thomas. The proof showed it to be the joint property of J. C. and G. D. Thomas, but to be under the exclusive control of J. C. Thomas. *Held*, that, under article 426 of the Code of Criminal Procedure, it was unnecessary either to allege or prove the non-consent of G. D. Thomas.

3. SAME — EVIDENCE.— Article 4556 of the Revised Statutes requires only that the owner of a mark and brand shall record the same in the county comprising the intended range of his stock, and cannot be construed to require the owner to record his mark and brand in every county into which his cattle may stray. The records of marks and brands of T. county, the county of the range, was, therefore, competent evidence in D. county, in which the venue of the offense was laid, and the trial had; and equally competent in D. county were the certificates of the county clerk of T. county as to the brands of record in T. county.

4. SAME — CHARGE OF THE COURT.— Article 727 of the Penal Code provides that, in theft, "the taking must be wrongful, so that if the property came into the possession of the person accused of theft, by lawful means, the subsequent appropriation of it is not theft; but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete." Note the statement of the case for facts which bring this case within this rule, and see the opinion *in extenso* for a charge of the court upon the principle, *held* correct in view of the evidence.

5. SAME — INDICTMENT.— Under the law of this State, a conviction for theft can be had under an ordinary indictment for that offense upon proof that the taking, though with the owner's consent, was obtained by false pretext and with intent to deprive the owner of the value of the property, and appropriate it to the use and benefit of the taker. The indictment in this case is supported by the proof.

VOL. XIX—26

6. SAME — CASE DISTINGUISHED. — Note the opinion for the distinction between this and Hardeman's case, 12 Texas Ct. App., 207.
7. SAME — FACT CASE. — See the statement of the case for evidence *held* sufficient to support a conviction for cattle theft.

APPEAL from the District Court of Denton.    Tried below before the Hon. F. E. Piner.

The conviction in this case was for the theft from the possession of T. W. Sims of three head of cattle, the property of J. C. Thomas, in Denton county, Texas, on the 20th day of December, 1884. A term of three years in the penitentiary was the penalty assessed against the appellant.

T. W. Sims was the first witness for the State.    He testified that he lived in Denton county, some sixteen or seventeen miles from the town of Denton and near Elizabethtown.    The witness first saw the defendant about the 6th day of December, 1884, when he came to witness's house with a man whose name witness has since learned was George Beam.    Witness was in his field when defendant and Beam first rode up to his yard gate.    They left presently, going west of the house into the pasture, whence after a time they returned with the cattle described in this indictment.    They rode up to where the witness was, and told him that they had seen the witness's advertisement of some of their cattle for sale.    Witness asked defendant his name, and he replied that it was Frank Anderson. Beam did not give his name.    Both talked as though each owned an interest in the cattle.    They told witness that they lived about twelve miles northwest of Decatur, Wise county; that the cattle advertised by witness belonged to them; that their cattle-mark was a crop and split in the left and an overslope in the right ear, and that their brand was a circle-T.    The cattle involved in this controversy had, when they were taken up and advertised by the witness, been running with his cattle on his range for some time.    When witness advertised them he put them in his pasture with his cattle.    Chris Haden wrote the advertisement for witness, setting out the marks and brands of the animals.    Those advertisements were legally posted.    Defendant and Beam claimed the cattle, and witness believed from what they said that they owned them.    They told witness that they could not take the cattle away just then, and asked witness's permission to let them run in the pasture until they could come and get them.    Witness gave that permission, and released the cattle to defendant and Beam.    The two parties returned to witness after riding off a short distance, and asked him if he did not

want to buy the cattle. Witness replied that he was not able to buy. They replied that they would make witness able, and witness replied that he would buy if they could do that. They then told witness that they would not be back for three or four weeks; that if witness could pay them $30 then he could have the cattle; if not, they would take the animals. Witness asked if upon those conditions he took the cattle, would they consent for him to sell all or any of them if he found an opportunity. They replied in the affirmative. Witness then asked them how he could remit if he could get the money before their return and wanted to pay. They told him to send the money to George Beam, Denton, Texas. They then left. Witness subsequently sold the cattle to a man in Fort Worth for $9 more than he gave for them, and sent, as directed, $20 to George Beam, Denton, Texas. Witness withheld $10 of the purchase money for the purpose of exacting a bill of sale. Before the parties returned for the balance of the purchase money, witness learned that the cattle really belonged to J. C. Thomas, and he paid Mr. Pettigrew, Thomas's agent, for them. Defendant came back for the balance of the money sometime afterwards, and said that he had moved his ranche to Jack county and was living there, but had come to witness's house from Gainesville. Defendant was then arrested.

Cross-examined, the witness stated that the defendant and Beam drove the cattle from the pasture to the point where the transaction described occurred. Both parties joined in the conversation. The witness could not say whether or not Beam ever received the $20 sent to his address at Denton. Defendant told witness that he had not received it. Roanoke, six miles distant, was the nearest post-office at which witness could have purchased a money order. Witness learned that J. C. Thomas owned the cattle by going to Denton and asking who gave the mark and brand in which the cattle were. Pettigrew heard witness's questions. Witness did not know whether George Beam kept a livery-stable in Denton then or not, but thinks that he does now. There were three head of cattle in the bunch described, one cow marked crop and split in the left and overslope in the right ear, and branded circle-T; one yearling marked crop off the left and overslope in the right ear, and a calf unmarked and unbranded. The latter was calved after the cow came to that range. Witness identified defendant and George Beam as the two men who claimed the cattle and sold them to him.

John Arnold was the next witness for the State. He testified that he knew the defendant by sight only. He saw defendant and

Beam at his house near Elizabethtown, in December, 1884. T. W. Sims lived one and a half miles distant from witness, west. Defendant and Beam stayed all night with witness about the time the cattle were taken from Sims. Witness did not know their names at that time. They told witness that they lived in Wise county, northwest of Decatur, and asked directions to Sims's house. As they left witness's house witness asked their names. Beam did not reply, and defendant said that his name was Frank Anderson. They said nothing about the cattle at witness's house.

J. C. Thomas testified, for the State, that he lived in Throckmorton county, Texas. Witness owned cattle in Throckmorton county, which were taken there from Fannin county about four years before this trial. Witness went from Fannin to Throckmorton county with the first, but not with the last, of his herds of cattle. The herd witness drove was taken through the northern portion of Denton county. Witness's mark and brand were recorded in Throckmorton county. Witness's brother, G. D. Thomas, lived in the State of Oregon, and owned cattle in Throckmorton county, which cattle were in witness's care and control. His mark and brand is of record in Throckmorton county. The witness then identified certain certificates of marks and brands taken from the records of Throckmorton county, and testified that he saw them made out and certified by M. F. Barber, at that time county clerk of Throckmorton county. The said certificates were introduced in evidence, over objection by the defense.

Continuing his testimony, witness said that he had never given the defendant or any one else his consent to take any cattle in the marks and brands described. Witness had full control and management of all cattle in the marks and brands described. G. D. Thomas had, with witness, a half interest in all cattle in said marks and brand, but no control of any. The crop and split in the left ear and overslope in the right was the original mark driven from Fannin county. The other was established after the removal to Throckmorton. Witness's contract with G. D. Thomas was verbal until within the last twelve months, when it was reduced to writing, which writing defined the interest of each in the cattle. That writing was at the witness's home in Throckmorton county. Witness had not seen the cattle alleged to have been stolen by the defendant, but the cattle, according to the testimony, were in witness's mark and brand.

Newt. Paschal testified, for the State, that at one time he worked for the Thomases in Throckmorton county, handling their cattle.

The brand given by them was a circle-T.   Witness did not remember their mark.

J. D. Shifflet testified that defendant was at his house once in November, 1884, and once in December, 1884, on both of which occasions he gave his name as Atterberry.

Chris. Haden, for the State, testified that he wrote the advertisements to sell the cattle for Sims.   He described the cattle as did Sims.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.   It was alleged in the indictment that the cattle were the personal property of one J. C. Thomas, and that they were taken from the possession of one T. W. Sims.

These cattle had been running around the premises of Sims for some time, and he concluded he would advertise them with a view of estraying them, in case the owner did not come and claim them. Defendant and one Beam saw the advertisement, went to Sims's place, took the cattle from his pasture where he had placed them, and drove them to where Sims was at work in his field.   They told Sims they had seen his advertisement of their cattle, that they were their property, and they had come to get them.   They proposed to sell to him and, having made him an extremely liberal offer, he accepted the terms and subsequently sent part of the purchase money, as instructed by them, to Beam's address at Denton.   Sims sold the cattle to a party in Fort Worth, and afterwards becoming satisfied they belonged to Thomas, repurchased them from Thomas's agent.

J. C. Thomas lived and had a cattle ranche in Throckmorton county, in which ranche and the cattle his brother was a joint owner. That J. C. Thomas had the exclusive care, management, custody and control of the cattle.   Their non-consent to the taking was proven both by Sims and J. C. Thomas, who each appeared and testified at the trial.   When Thomas stated that he and his brother had a written agreement in relation to their respective rights and interests in the cattle, defendant insisted that the writing was the best evidence of such rights and interests, and moved the court to exclude all that had previously been said by J. C. Thomas without objection, about his management and control of the cattle.   This the court refused to do.

There was no error in this. True, the witness had stated that the property was joint property. Still the written instrument could only have shown the details of the partnership or ownership, and such details were immaterial to the defendants or the issue to be tried. It might have been the best evidence in a matter at issue between the joint owners, but as to third parties, under the law and upon an issue such as was here presented, we cannot see how it could be considered better evidence of ownership than the declaration of one of the parties to the instrument. It is provided by statute that "where property is owned in common or jointly by two or more persons, the ownership may be alleged to be in all or either of them." (Code Crim. Proc., art. 426.) So far as the other Thomas was concerned, the State was not bound to allege or prove his want of consent (*Barrett* v. *The State*, 18 Texas Ct. App., 64; *Bailey* v. *The State*, id., 426; *Frazier* v. *The State*, id., 434; *Phillips* v. *The State*, 17 Texas Ct. App., 169; *Terry* v. *The State*, 15 Texas Ct. App., 66), and the character of his interest in the stock was wholly immaterial to defendants or to any issue in the case. J. C. Thomas testified, notwithstanding the joint ownership, that he had the exclusive care, custody and control of the property, and, if the jury believed him, that was all that was requisite or necessary on that subject to establish his ownership as alleged.

Certificates of the clerk of the county court of Throckmorton county as to the marks and brands of the Thomases was objected to by defendant because said mark and brand was not recorded in Denton county. It is true that the statute says that the mark and brand of the owner of cattle shall be recorded by the clerk of the county court where such cattle shall be (Rev. Stats., art. 4556), but this, as we understand it, relates entirely to the county in which he intends his cattle to range. True, he may record his mark and brand in as many counties as he may think necessary. (*Id.*) This, however, does not require him to make a record in every county in the State, or in every county into which his cattle may stray. He shall record in the county of his range, and wherever else he may think necessary. When his cattle stray into other counties he can use the record evidence of the mark and brand of the county of the range, in the county where they are found, without recording his mark and brand in said county. The certificate from the county clerk's office where he is required to record is evidence wherever else his cattle may be found. We are of opinion the certificate of the county clerk of Throckmorton county was sufficient, and that it was admissible as evidence in the case.

Again, it is objected that the court erred in charging the jury

that "if the taking, though originally lawful, was obtained by any false pretext or with intent to appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete," because, it is said, such charge is inapplicable to the facts in the case. We are of opinion the charge was directly called for by the facts, and that the general charge would have been deficient without such instruction.

It was alleged and proven that the animals were taken from Sims's possession. It was further proven that Sims had consented to the taking, and had recognized defendant's right to take, and had purchased the cattle from defendants after they had taken them. But the evidence further showed that Sims's consent was obtained by the fraudulent pretext of defendant and Beam that they were the owners of the cattle. In theft "the taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft; but, if the taking, though originally lawful, was obtained by any false pretext or with any intent to deprive the owner of the value thereof and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete." (Penal Code, art. 727.) Under the facts of the case it was necessary the jury should be properly informed and instructed as to this principle of the law.

In this case the indictment did not charge a theft by means of a false pretext; still it is the settled law of this State that under an ordinary indictment for theft, a conviction can be had on proof that the taking, though with the owner's consent, was obtained by false pretext and with intent to deprive the owner of the value of the property and appropriate it to the use and benefit of the taker. (*Dow* v. *The State*, 12 Texas Ct. App., 343; *Morrison* v. *The State*, 17 Texas Ct. App., 34.)

This case is different from *Hardeman* v. *The State*, 12 Texas Ct. App., 207, in that in this case defendant and Beam had taken possession of the cattle and driven them from the pasture before they sold them to Sims.

Defendant, so far as we can judge from the record, has had a fair trial, and three years' imprisonment in the penitentiary cannot be said to be excessive punishment under the facts of the case.

The judgment is affirmed.

*Affirmed.*

[Opinion delivered November 18, 1885.]